[Cite as *State v. McCallum*, 2021-Ohio-2938.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                           :

     Plaintiff-Appellee,                      :                        No. 19AP-796
                                                       (C.P.C. No. 18CR-2614)

v.                                                      :

                                                   (REGULAR CALENDAR)

E'lorna B. McCallum,                                    :

     Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on August 26, 2021

---

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Carpenter Lipps & Leland LLP, Kort Gatterdam,* and *Erik P. Henry*, for appellant. **Argued:** *Kort Gatterdam.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, E'lorna B. McCallum, appeals from a judgment entry of the Franklin County Court of Common Pleas finding her guilty, pursuant to jury verdict, of voluntary manslaughter. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed May 31, 2018, plaintiff-appellee, State of Ohio, charged E'lorna with one count of aggravated murder in violation of R.C. 2903.01, an unclassified felony; one count of murder in violation of R.C. 2903.02, an unclassified felony; and one count of felony murder in violation of R.C. 2903.02, an unclassified felony, with an underlying offense of felonious assault in violation of R.C. 2903.11. All three charges contained accompanying three-year firearm specifications pursuant to R.C. 2941.145(A).

The charges related to the shooting death of Latasha M. Dailey on May 23, 2018. E'lorna entered a plea of not guilty.

{¶ 3} At a trial beginning September 9, 2019, the state introduced evidence that on the evening of May 23, 2018, E'lorna shot Dailey on the street outside the residence at 146 Columbian Avenue, killing Dailey. Dailey was E'lorna's sister's girlfriend. There was no dispute that E'lorna shot Dailey. The issue at trial was whether E'lorna acted in self-defense and/or defense of another or acted under serious provocation.

{¶ 4} During the trial, the state presented testimony that on May 22, 2018, prior to the shooting, Dericka McCallum called 911 from her residence and told the dispatcher that Dailey had threatened to kill her and destroy her property. Officers from the Columbus Division of Police responded to the scene around 12:05 p.m. and spoke with Dericka and Dailey. The state played the body-worn camera footage of the officer who responded to the scene, and the footage showed Dericka telling police that Dailey had sent her text messages and recordings threatening to kill her, including telling Dericka that Dericka's mother should make funeral plans. In addition to the threatening messages, Dericka also told police that Dailey had tampered with the security system at the residence. Dericka told police that Dailey lived with her until two weeks ago when the couple ended their relationship. After speaking with police, Dailey told officers she would leave, and one of the officers told Dailey she had given up residential rights at the property.

{¶ 5} The next day, on May 23, 2018, Dericka called 911 again at 9:22 p.m. Dericka told the dispatcher that Dailey had physically assaulted her. Two officers with the Columbus Division of Police, Bryce Garlock and Timmeka Alexander, responded to the residence at 9:47 p.m. and stayed there until 11:01 p.m. Dericka, Dailey, and E'lorna were all at the residence when police arrived. Dericka told the police officers that Dailey had damaged her car, had slapped her across the face, had broken her toe, and had stolen her phone. Dericka told the officers she had ended her relationship with Dailey more than two weeks ago, but Dailey returned to the residence and declared she would not leave until Dericka was "in a casket." (State's Ex. F-1 at 2:00-2:30.) As seen in the body-worn camera footage, Dericka told the officers she did not feel safe in her own house and wanted Dailey to leave. Dericka also told police that Dailey made threats to kill her sister, E'lorna.

{¶ 6} Dailey told the officers she was not leaving unless Dericka had her evicted. The officers spent a considerable amount of time trying to convince Dailey to leave and suggested she have someone pick her up. Eventually, Dailey claimed she found someone to pick her up in 20 minutes, so the officers prepared to leave. Prior to leaving, the officers advised Dericka to seek a protection order the next day. Additionally, the officers told E'lorna to help keep things calm at the residence. The officers did not arrest Dailey, telling Dericka that they could not make an arrest without an independent witness corroborating Dericka's account of being slapped by Dailey. E'lorna told the officers she planned to stay with her sister all night, and the officers advised Dericka and Dailey to keep away from each other and ignore each other.

{¶ 7} Shortly after the officers left the residence, Dailey called 911 at 11:10 p.m. telling the dispatcher that E'lorna had pulled a gun on her. Dailey then called 911 again four minutes later and told the dispatcher that E'lorna was chasing her with a gun, coming in and out of the residence while Dailey stood outside. Dailey then called 911 a third time at 11:17 p.m., three minutes after her previous call, and told the dispatcher that E'lorna was still chasing her with a gun and was currently standing in front of the residence with a gun.

{¶ 8} Approximately one minute after Dailey's third 911 call, both a police helicopter and patrol officers arrived at the residence at 146 Columbian Avenue. Officer Edward Cox, the helicopter officer, testified that he observed a person running down the center of the street and then saw a second pursuing the first person. Officer Cox testified he could see the second person holding something while standing in the center of the street and then saw what he perceived to be a muzzle flash consistent with the firing of a gun.

{¶ 9} When the patrol officers arrived at the residence, E'lorna walked out from behind a vehicle with her arms raised. Officers ordered E'lorna to the ground, detained her, and, after E'lorna told them she had a gun on her person, officers located and retrieved a revolver in her right front coat pocket. E'lorna told the officers "[s]he hit my sister, she physically hit her." (State's Ex. N-1 at 2:15-2:20.) The state played the video footage from the officers' body-worn cameras, and E'lorna is cooperative with police as they detain her and secure the scene. The gun had four spent cartridges and one live cartridge.

{¶ 10} Police officers also located Dailey lying face down in the grass in front of the house at 171 Columbian Avenue. Dailey had a gunshot wound to the back of the head and

was unresponsive, and Officer Darrel Kerns noted Dailey's shallow breathing. Dailey later died from her injuries. An autopsy showed Dailey sustained gunshot wounds to her right thigh and to the right side of her head, with one bullet remaining inside her brain causing her death.

{¶ 11} Kevin Singleton, a sergeant with the Columbus Division of Police, testified that he interviewed Dericka at the residence and she told him that she had previously called police because Dailey had accused E'lorna of stealing Dailey's wallet, causing Dailey to damage E'lorna's car. Dericka told Sergeant Singleton that Dailey then attacked her, hitting her across the face and somehow injuring Dericka's toe. After police left the residence following Dericka's second 911 call, Dericka said that Dailey refused to leave so E'lorna became involved and started to demand that Dailey leave. Dericka told Sergeant Singleton that Dailey got in E'lorna's face and refused to leave, and the two continued to argue. According to Dericka's statement to Sergeant Singleton, Dailey and E'lorna went outside and continued to argue, and it was not until they were outside that Dericka noticed that E'lorna had a gun. Dericka told Sergeant Singleton that E'lorna knew that Dailey would not leave Dericka alone and that E'lorna had to "do something." (Tr. Vol. 3 at 528.) Dericka did not see the shooting but she told Sergeant Singleton she heard the gunshots.

{¶ 12} After the state's presentation of evidence, Victoria Smith, E'lorna and Dericka's mother, testified that Dericka and Dailey had been in a relationship for five years. Smith opined that Dailey was violent, and she described a phone call she received from Dailey a week prior to her death in which Dailey told Smith that she would send both of her daughters home in a body bag. The defense also called several other witnesses to testify as to E'lorna's generally peaceful nature, as well as witnesses who described Dailey's reputation for violence. A detective with the Columbus Division of Police testified that the alarm at the residence had been disconnected on May 22, 2018 shortly before Dericka's first 911 call and that power to the alarm was lost on May 23, 2018 shortly after Dericka's second 911 call.

{¶ 13} E'lorna testified in her own defense. She did not deny shooting and killing Dailey, but she described feeling protective of her older sister, Dericka. E'lorna testified that she first met Dailey in 2013 and described seeing Dailey shout at Dericka. As time progressed, E'lorna said her impression of Dailey only grew worse, describing incidents in

which Dailey would damage Dericka's car, break televisions, and throw plates in the house. In January 2015, E'lorna said that Dailey tried to kill Dericka by grabbing the steering wheel of Dericka's car and attempting to crash it.

{¶ 14} Following that incident with the car, E'lorna said that family members continually encouraged Dericka to end her relationship with Dailey, but the relationship continued until the end of April 2018. E'lorna testified she lived with Dericka at the time Dericka ended the relationship, partly to honor a request from their mother that E'lorna help protect Dericka from Dailey. E'lorna testified that her mother feared Dailey would kill Dericka, noting Dailey had already threatened to do so. Though Dailey did move her belongings out of the house, E'lorna testified that Dailey returned the day before the shooting and made more threats to Dericka.

{¶ 15} On the night of the shooting, E'lorna said that after the police officers left the house, Dailey was not making any progress toward leaving the house as she had indicated she would. E'lorna testified that Dailey said she was not going to leave. After Dericka said she wanted Dailey to leave, E'lorna testified that she told Dailey she was no longer wanted and needed to leave. According to E'lorna, this statement "enraged" Dailey and Dailey began screaming in E'lorna's face. (Tr. Vol. 4 at 841.) E'lorna testified that Dailey said she was not going anywhere and that E'lorna would need to "do something about it." (Tr. at 841.) E'lorna said she backed away from Dailey but that Dailey would follow her and get back in her face, screaming again that she was not going to leave and threatening to fight E'lorna. She also testified that Dailey said she was going to call her "peoples," which E'lorna construed as a threat because of Dailey's previous statements that she wanted to kill E'lorna and Dericka. (Tr. Vol 4 at 842.)

{¶ 16} E'lorna said that she and Dailey then both saw a gun on the corner of the couch, and E'lorna assumed it belonged to Dailey. According to her testimony, E'lorna picked up the gun to prevent Dailey from getting to it first, at which point she said Dailey ran out the back door. E'lorna described herself as being in a state of shock that Dailey really intended to kill both her and her sister. When she went outside to see if Dailey was gone, E'lorna testified she saw Dailey near the neighbor's yard and that Dailey continued to say she was not leaving. Seeing that Dailey was on the phone, E'lorna assumed Dailey had called her "peoples" that she had referenced earlier, E'lorna said she ran up to Dailey and

told her to leave. E'lorna testified that Dailey did not appear frightened and said she was not going anywhere, which caused E'lorna to feel even more afraid because she believed Dailey was waiting for people to help her attack E'lorna and Dericka.

{¶ 17} At this point, E'lorna said Dericka came out of the house. E'lorna said she believed that Dailey's family members would arrive with guns to kill both her and Dericka, and she testified that she felt scared, afraid for her life and her sister's life, and angry. E'lorna said she "went into a rage" and, when she saw Dailey looking down the street as though she were expecting someone to arrive, E'lorna was terrified, chased Dailey down the street, and started shooting. (Tr. Vol. 4 at 853.) E'lorna said she first shot Dailey in the leg but that she continued to pursue her and shoot her a second time, intending to kill Dailey, because she was so afraid that Dailey would kill either her, her sister, or both of them. E'lorna testified she felt "sorry" for Dailey's death but that she felt justified in shooting her due to Dailey's threatening actions. (Tr. Vol. 4 at 856.)

{¶ 18} Dericka did not testify at trial.

{¶ 19} Following deliberations, the jury found E'lorna not guilty of aggravated murder and the lesser charge of voluntary manslaughter as charged in Count 1 of the indictment, not guilty of murder as charged in Count 2 of the indictment, but guilty of the stipulated lesser offense of voluntary manslaughter and the accompanying firearm specification. The trial court held a sentencing hearing on October 23, 2019 and sentenced E'lorna to 10 years on the voluntary manslaughter conviction consecutive to a 3-year term on the firearm specification for an aggregate prison term of 13 years. The trial court journalized E'lorna's conviction and sentence in an October 29, 2019 judgment entry. E'lorna timely appeals.

## II. Assignments of Error

{¶ 20} E'lorna assigns the following errors for our review:

> [1.] The conviction for voluntary manslaughter in Count Two must be reversed because the jury returned an inconsistent verdict by finding appellant not guilty of voluntary manslaughter in Count One.
>
> [2.] The trial court erred in denying appellant the assistance of an expert in battered woman syndrome which deprived

appellant of her right to due process, the effective assistance of counsel, and a fair trial.

[3.] The trial court erred by refusing to provide self-defense and defense of another instructions to the jury in violation of appellant's due process rights guaranteed by the United States and Ohio Constitutions.

[4.] The trial court abused its discretion by denying admission of evidence regarding the lack of a lethality screen by law enforcement depriving appellant of her right to present a defense and due process of law.

[5.] Appellant was deprived of the effective assistance of trial counsel in violation of appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

[6.] The trial court's sentencing findings are not supported by the record and the sentence imposed is contrary to law.

## III.  First Assignment of Error – Inconsistent Verdicts

{¶ 21}   In her first assignment of error, E'lorna argues the jury returned inconsistent verdicts when it found her not guilty of voluntary manslaughter under Count 1 of the indictment but guilty of voluntary manslaughter under Count 2 of the indictment.

{¶ 22} " 'Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.' " *State v. Preston-Glenn*, 10th Dist. No. 09AP-92, 2009-Ohio-6771, ¶ 31, quoting *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 15 (10th Dist.), citing *State v. Adams*, 53 Ohio St.2d 223, 228, *vacated on separate grounds,* 439 U.S. 811 (1978). *See also State v. Howard*, 10th Dist. No. 06AP-1273, 2007-Ohio-5659, ¶ 6-7 (distinguishing cases concerning inconsistent verdicts to different counts versus inconsistent verdicts arising from the same count).  In a multi-count indictment, each count is distinct and independent of all other counts, and therefore inconsistent verdicts among different counts do not justify overturning a verdict of guilt.  *Preston-Glenn* at ¶ 31, citing *Trewartha* at ¶ 15 (noting "[t]he sanctity of the jury verdict should be preserved and could

not be upset by speculation or inquiry into such matters to resolve the inconsistency"),
citing *State v. Lovejoy*, 79 Ohio St.3d 440, 444 (1997).

{¶ 23} Here, Count 1 of the indictment charged E'lorna with aggravated murder and
Count 2 of the indictment charged her with murder. The state sought instructions on the
lesser offense of voluntary manslaughter as to both counts. While acknowledging the
general rule that consistency in the verdict is not necessary, E'lorna nonetheless argues the
inconsistency here requires reversal because although the indictment charged her under
two counts, both counts arose from the same conduct. Specifically, E'lorna relies on the
trial court's instructions on the lesser offenses as essentially treating both counts as the
same offense. In instructing the jury on voluntary manslaughter for both Count 1 and
Count 2 of the indictment, the trial court stated:

> As you consider either the indicted offense of Aggravated
> Murder in Count One or the indicted offense of Murder in
> Count Two, you may also consider the lesser offense of
> Voluntary Manslaughter. You may consider whether or not
> that at the time of the offense in question the Defendant acted
> knowingly while she was under the influence of sudden passion
> or in a sudden fit of rage either of which was brought on by
> serious provocation occasioned by Latasha Dailey that was
> reasonably sufficient to incite the Defendant into using deadly
> force.

(Tr. Vol. 5 at 1056-57.)

{¶ 24} Despite E'lorna's argument that the trial court's instructions on the lesser
offense of voluntary manslaughter under both counts of the indictment resulted into a de
facto single count, the fact remains that the state charged E'lorna under a two-count
indictment. Each of those two counts carried the possibility of a lesser offense. E'lorna
points to no authority suggesting that separate counts of an indictment should be
considered as a single count where those counts carry the possibility of the same lesser
offense. *See Preston-Glenn* at ¶ 32 (rejecting defendant's argument that the two charges
filed in separate complaints were essentially the same count where they were both based
on the same conduct, and therefore finding there was not the kind of inconsistency in
verdicts that would require reversal of defendant's conviction). Instead, the jury's finding
E'lorna not guilty of voluntary manslaughter as a lesser offense of aggravated murder but

guilty of voluntary manslaughter as a lesser offense of murder does not create the kind of inconsistency in verdicts that necessitates reversal of her conviction. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 81 (stating "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable," and noting it is equally possible such verdicts are reached "through mistake, compromise, or lenity" on the part of the jury).

{¶ 25} Because the voluntary manslaughter verdicts here related to two separate counts of the indictment, E'lorna has not demonstrated the kind of inconsistency in verdicts that would necessitate reversal of her conviction. The aggravated murder and murder counts were distinct and independent of each other, and therefore the lesser offense associated with Count 1 was distinct and independent of the lesser offense associated with Count 2. *Preston-Glenn* at ¶ 33, citing *Trewartha* at ¶ 16. Accordingly, we overrule E'lorna's first assignment of error.

## IV. Second Assignment of Error – Battered Woman Syndrome

{¶ 26} In her second assignment of error, E'lorna argues the trial court erred in denying her request for an expert witness in the field of battered woman syndrome. E'lorna asserts the trial court's denial of this request deprived her of due process, the effective assistance of counsel, and a fair trial.

{¶ 27} "As a matter of due process, indigent defendants are entitled to receive the 'raw materials' and the ' "basic tools of an adequate defense," ' " which may include the provision of expert assistance. *State v. Mason*, 82 Ohio St.3d 144, 149 (1998), quoting *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985), quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971). Though *Ake* involved the provision of expert psychiatric assistance only, the Supreme Court of Ohio now generally recognizes *Ake* to stand for the proposition that due process may require that a criminal defendant be provided with other types of expert assistance when necessary to present an adequate defense. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 220, citing *Mason* at 149. Additionally, R.C. 2929.024 requires a trial court in an aggravated murder case to provide funds for expert assistance when "reasonably necessary for the proper representation of a defendant charged with aggravated murder."

{¶ 28} "Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, does not require the government to provide expert assistance to an indigent defendant in the absence of a particularized showing of need." *Mason* at 150. "Nor does it require the government to provide expert assistance to an indigent criminal defendant upon mere demand of the defendant." *Id.* Instead, as the Supreme Court has held, "the state must provide an indigent criminal defendant with funds to obtain expert assistance when the defendant has made a particularized showing that (1) there exists a reasonable probability that the requested expert would aid the defense and (2) denial of that expert assistance would result in an unfair trial." *Maxwell* at ¶ 221, citing *Mason* at syllabus. Moreover, "[t]he trial court's ruling on such requests is a matter left to the exercise of the court's 'sound discretion.' " *Id.*, quoting *Mason* at syllabus. Accordingly, we review the trial court's denial of E'lorna's request for funds for expert assistance for an abuse of discretion. *Id.* An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} E'lorna argues the trial court abused its discretion when it denied her request for funds for expert assistance on the issue of battered woman syndrome. The Supreme Court has held that "expert testimony on battered-woman syndrome is admissible as evidence to prove one element of self-defense." *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 35, citing *State v. Koss*, 49 Ohio St.3d 213 (1990), paragraph three of the syllabus. Specifically, testimony on battered woman syndrome can be "appropriate in relation to the second element of self-defense, that is, to 'assist the trier of fact to determine whether the defendant acted out of an honest belief that she [was] in imminent danger of death or great bodily harm and that the use of such force was her only means of escape.' " *Id.* ¶ 37 quoting *Koss* at paragraph three of the syllabus.

{¶ 30} Additionally, the General Assembly has recognized the admissibility of battered woman syndrome testimony and has stated that it may be employed in self-defense cases. R.C. 2901.06 provides:

> (A) The general assembly hereby declares that it recognizes both of the following, in relation to the "battered woman syndrome:"

(1) That the syndrome currently is a matter of commonly accepted scientific knowledge;

(2) That the subject matter and details of the syndrome are not within the general understanding or experience of a person who is a member of the general populace and are not within the field of common knowledge.

(B) If a person is charged with an offense involving the use of force against another and the person, as a defense to the offense charged, raises the affirmative defense of self-defense, the person may introduce expert testimony of the "battered woman syndrome" and expert testimony that the person suffered from that syndrome as evidence to establish the requisite belief of an imminent danger of death or great bodily harm that is necessary, as an element of the affirmative defense, to justify the person's use of the force in question. The introduction of any expert testimony under this division shall be in accordance with the Ohio Rules of Evidence.

{¶ 31} Thus, the caselaw and statutory framework recognize the admissibility of expert testimony on battered woman syndrome in certain circumstances where a defendant seeks to use that expert testimony to aid in the explanation of the second prong of a claim of self-defense. Here, however, E'lorna does not argue that she, herself, suffered from battered woman syndrome. Instead, E'lorna sought to argue that her sister suffered from battered woman syndrome and that, therefore, her sister's battered woman syndrome helped to explain E'lorna's own use of force when she acted in defense of another. We are mindful, however, that the relevant caselaw generally examines testimony regarding battered woman syndrome as being relevant to explaining a *victim's* behavior. *See State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, ¶ 46; *State v. Palmer*, 10th Dist. No. 99AP-175, 2000 Ohio App. LEXIS 1247 (Mar. 28, 2000) (stating "[e]vidence concerning battered woman syndrome in general and evidence the appellant suffered from that syndrome in particular is pertinent only as it contributes to the appellant's state of mind at the time the killing occurred, i.e., that it contributed to the appellant's perception of being in imminent danger of severe bodily harm or death at the hands of her partner"), citing *Koss* at 217. E'lorna does not purport to be the victim of battered woman syndrome and is, instead, a third-party to the alleged battered woman syndrome relationship.

{¶ 32} Further, E'lorna's entire argument on expert assistance presupposes she was entitled to receive an instruction on self-defense and defense of another. For purposes of our analysis under this assignment of error, we will not address the evidentiary circumstances at trial that precluded these instructions. However, even assuming E'lorna could prove the requisite foundational elements that her sister suffered from battered woman syndrome, E'lorna does not explain how expert assistance was necessary to demonstrate that her sister's mental state as the result of being a battered woman could sufficiently transfer to E'lorna to explain E'lorna's own use of force against Dailey. Instead, E'lorna merely hypothesizes that such expert testimony could have aided the jury. Such speculation does not amount to the requisite particularized showing of a reasonable probability that the requested expert would aid her defense in order to require the granting of funds for expert assistance. Accordingly, the trial court did not abuse its discretion in denying E'lorna's motion for expert assistance.

{¶ 33} We overrule E'lorna's second assignment of error.

## V.  Third Assignment of Error – Self-Defense and Defense of Another Instruction

{¶ 34} In her third assignment of error, E'lorna argues the trial court erred in denying her request for jury instructions on self-defense and defense of another.

{¶ 35} In reviewing a trial court's jury instructions, an appellate court must determine whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. *State v. Gover*, 10th Dist. No. 05AP-1034, 2006-Ohio-4338, ¶ 22, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). As noted above, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore* at 219.

{¶ 36} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Conversely, " '[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue.' " *State v. Mankin*, 10th Dist. No. 19AP-650, 2020-Ohio-5317, ¶ 34, quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991), citing *Riley v. Cincinnati*, 46 Ohio St.2d 287 (1976). Thus, in reviewing a record to

determine whether there is sufficient evidence to support the giving of an instruction, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy* at 591, citing *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971), syllabus.

{¶ 37} E'lorna sought instructions on self-defense and defense of another. Effective March 28, 2019, the current version of R.C. 2901.05(B)(1) provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

Thus, the current version of R.C. 2901.05(B)(1) requires the state "to disprove self-defense by proving beyond a reasonable doubt that [the defendant] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger." *State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31; *see also State v. Daley*, 10th Dist. No. 19AP-561, 2020-Ohio-4390, ¶ 39.

{¶ 38} This court has recently reiterated that, under the current version of R.C. 2901.05, although the burden of *proof* for the affirmative defenses of self-defense and defense of another has shifted to the state, the burden of *production* for all affirmative defenses, including self-defense and defense of another, remains with the defendant. *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 44, citing *State v. Parrish*, 1st Dist. No. C-190379, 2020-Ohio-4807, ¶ 14; *State v. Petway*, 11th Dist. No. 2019-L-124, 2020-Ohio-3848, ¶ 55. Thus, to be entitled to an instruction on self-defense and/or defense of another, there must have been evidence presented that tends to support that E'lorna acted in self-defense and/or defense of another.

{¶ 39} Having reviewed the record in its entirety, we do not find the trial court abused its discretion in denying E'lorna's request for a self-defense and defense of another instruction. As to the first prong of a claim of self-defense and defense of another, whether E'lorna was not at fault in creating the situation giving rise to the affray, we note that by E'lorna's own testimony, her confrontation with Dailey was really two distinct confrontations: one inside the house and one outside the house on the street near a neighbor's house. Although E'lorna testified that she was afraid of Dailey while she was in the house and described both herself and Dailey as trying to get to the gun first, E'lorna testified that Dailey did leave the residence following that first confrontation. The second confrontation, and the one that ultimately led to E'lorna's use of force, occurred once Dailey was outside the house. E'lorna testified that she looked outside and saw Dailey down the street near a neighbor's yard. It was at that point, pursuant to E'lorna's own testimony, that E'lorna ran outside and confronted Dailey on the street, pointing a gun at Dailey. E'lorna testified that Dailey did not appear frightened by E'lorna approaching her with a gun. After she pointed the gun at Dailey, E'lorna testified that Dailey moved across the street and went into a neighbor's yard. E'lorna testified she then chased Dailey down the street, shooting four shots at her. Though E'lorna may have presented evidence that tends to show she was not at fault for the situation *inside* the house, her own testimony is clear that E'lorna initiated, and was at fault for, the situation *outside* the house, including chasing Dailey down the street and shooting her. *See State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 15 (stating "a multitude of courts have found that a defendant is at fault in creating the situation giving rise to the affray or violated a duty to avoid danger or retreat when he chooses to confront the victim, chooses to knowingly go to a place where the victim will be or refuses to move in a direction away from the victim, even when the defendant's action was otherwise completely lawful").

{¶ 40} Moreover, the second prong of a claim of self-defense or defense of another asks whether E'lorna had an honest belief that she or her sister were in imminent danger of death or great bodily harm and that their only means of escape was in the use of force. E'lorna testified that she was afraid that Dailey was going to call friends and family members to help her return to the residence and attack E'lorna and her sister. However, as the trial court noted, even if E'lorna legitimately believed Dailey was asking friends and

family to come to the residence, chasing Dailey down the street and shooting her would not mitigate the threat of other people arriving. Additionally, Dailey was alone in the street when E'lorna confronted her outside, and E'lorna admitted she chased her down the street and continued to shoot her until she was sure Dailey was dead, so there was no evidence of the kind of imminent danger that a claim of self-defense and defense of another requires. *See State v. Kean*, 10th Dist. No. 17AP-427, 2019-Ohio-1171, ¶ 58, 61 (noting a component of the second element of self-defense includes a showing that the defendant used only that force that was reasonably necessary to repel the attack, and defendant's decision to stab the victim in the chest after the victim, at most, threw a single punch during a fist fight, demonstrated that the defendant was neither warranted in using the degree of force nor proportionate to the perceived threat).

{¶ 41} For these reasons, the evidence at trial did not tend to support the giving of an instruction that E'lorna acted in self-defense and/or defense of another. Accordingly, the trial court did not abuse its discretion in refusing E'lorna's request for these instructions to the jury. We overrule E'lorna's third assignment of error.

## VI. Fourth Assignment of Error – Evidentiary Rulings

{¶ 42} In her fourth assignment of error, E'lorna argues the trial court erred in refusing to admit evidence regarding police procedure during one of the police responses to the residence prior to the shooting. Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

{¶ 43} E'lorna's argument under this assignment of error relates to her attempt to introduce evidence at trial that police failed to follow their own procedures for responding to a domestic violence call when they did not perform a lethality screen. At trial, Officer Todd Aiello testified that a lethality screen is part of Columbus Police protocol involving "a preprinted questionnaire you'd ask somebody you feel that's at high risk on a domestic violence situations." (Tr. Vol. 1 at 250.) E'lorna sought to argue at trial that police should have performed a lethality screen when they responded to Dericka's 911 call on May 22, 2018. The state objected to this line of questioning, arguing that E'lorna was attempting to suggest the police did not adequately protect Dericka but that such information was not

relevant to E'lorna's criminal defense. The trial court agreed with the state, noting that the line of questioning was confusing the issues the jury needed to decide and was more prejudicial than probative. Thus, the trial court sustained the state's objection, refusing to admit the evidence of the lack of a lethality screen.

{¶ 44} E'lorna again attempted to introduce evidence of the lack of lethality screen when police responded to the residence on the day of the shooting. Again, however, the trial court found the line of questioning was not relevant and was confusing to the jury and, thus, did not allow the evidence. E'lorna argues the trial court abused its discretion in making these evidentiary rulings.

{¶ 45} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 46} Having reviewed the record, we agree with the trial court that the danger of confusion of the issues or misleading the jury substantially outweighed any potential relevance of the evidence of police not conducting a lethality screen when they responded to either of Dericka's 911 calls. Although E'lorna argues such evidence would have bolstered her argument that Dailey posed a threat despite police's failure to arrest her, the evidence of the police's lack of a lethality screen is, at most, only tangentially relevant to the ultimate question of whether E'lorna killed Dailey. We already explained in our resolution of E'lorna's third assignment of error that the evidence at trial did not warrant a self-defense or defense of another instruction. While E'lorna argues the evidence of the lack of a lethality screen would have helped her argument that she acted in self-defense or defense of another, she ignores the other evidence at trial indicating that she both initiated the fatal encounter and did not demonstrate she or her sister were in imminent danger of harm.

{¶ 47} Furthermore, E'lorna's insinuation that police somehow failed to protect Dericka poses a significant risk of confusion of the issues and misleading the jury as the police were not on trial for their conduct. The questions the jury had to decide were whether E'lorna killed Dailey and whether E'lorna acted under sufficient provocation. Suggesting

police did not follow their own protocol would not have helped the jury decide those questions but carried a significant risk that the jury would be confused on the issues before it. Thus, we agree with the trial court that the potential for confusion and misleading the jury from this evidence outweighs any potential probative value. *See State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 61 (stating "[i]n order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great"), citing *State v. Morales*, 32 Ohio St.3d 252, 258 (1987).

{¶ 48} Because the trial court did not abuse its discretion in refusing to admit the evidence of the police's lack of lethality screen for Dericka, we overrule E'lorna's fourth assignment of error.

## VII. Fifth Assignment of Error – Ineffective Assistance of Counsel

{¶ 49} In her fifth assignment of error, E'lorna argues she received the ineffective assistance of counsel.

{¶ 50} In order to prevail on a claim of ineffective assistance of counsel, E'lorna must satisfy a two-prong test. First, she must demonstrate that her counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires E'lorna to show that her counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If E'lorna can so demonstrate, she must then establish that she was prejudiced by the deficient performance. *Id.* To show prejudice, E'lorna must establish there is a reasonable probability that, but for her counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 51} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. E'lorna contends her trial counsel was ineffective in (1) failing to deliver upon promises made during opening statements; (2) failing to properly subpoena Dericka to testify at trial; and (3) failing to object to the jury instruction that the jury should not consider self-defense. Additionally, E'lorna asserts the cumulative effect of counsel's alleged errors rendered her trial counsel ineffective.

## A. Opening Statements

{¶ 52} E'lorna's first allegation of ineffective assistance of counsel is her trial counsel's failure to deliver on promises made during opening statements. More specifically, E'lorna notes her trial counsel stated in opening statements that police failed to conduct a lethality screen and that the evidence would demonstrate that E'lorna acted in self-defense or defense of another. As we discussed above, defense counsel did attempt at trial to both introduce evidence of the lack of lethality screen and to obtain an instruction on self-defense and defense of another. The trial court, in its discretion, denied both of those attempts. We are mindful that the length and content of trial counsel's opening statement is ordinarily a strategic or tactical decision. *State v. Silverman*, 10th Dist. No. 05AP-837, 2006-Ohio-3826, ¶ 151; *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 56. "Tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel." *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77, citing *In re M.E.V.*, 1oth Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 34. Although the subsequent rulings were not in her favor, the trial court's rulings did not render E'lorna's trial counsel's opening statement a deficient performance. Thus, E'lorna's first allegation of ineffective assistance of counsel does not satisfy the first prong of the *Strickland* test.

## B. Dericka's Subpoena

{¶ 53} E'lorna's second allegation of ineffective assistance of counsel is her trial counsel's failure to properly subpoena Dericka to testify at trial. Generally, trial counsel's decision whether or not to call a particular witness is a matter of trial strategy, and a reviewing court will not second guess that decision. *State v. Jones*, 10th Dist. No. 15AP-670, 2017-Ohio-1168, ¶ 26, citing *State v. Davis*, 10th Dist. No. 09AP-869, 2010-Ohio-4734, ¶ 17. " '[T]he mere failure to subpoena witnesses is not itself a substantial violation of an essential duty without a showing that their testimony would have assisted the defense.' " *Id.*, quoting *Davis* at ¶ 18.

{¶ 54} During the trial, defense counsel indicated it planned to call Dericka to testify but that Dericka informed counsel during the trial that she would not appear out of fear. Defense counsel admitted to only sending Dericka an e-mail subpoena but did not attempt to perfect service by regular mail. Defense counsel stated he did not feel he needed to

perfect regular mail service of the subpoena because Dericka had indicated she would be cooperative. Defense counsel ultimately proceeded with the trial and did not call Dericka to testify. E'lorna now argues her counsel was deficient in not calling Dericka to testify as Dericka could have helped E'lorna explain why she believed she needed to act to protect Dericka from Dailey.

{¶ 55} Despite E'lorna's attempts to characterize her counsel's failure to properly subpoena Dericka as a matter of deficient performance, a review of the record indicates trial counsel's decision not to formally subpoena Dericka was likely a matter of trial strategy. E'lorna presented ample evidence of the nature of the relationship between Dailey and Dericka, and the jury was able to view Dericka's statements to police on the body-worn camera footage. Moreover, Dericka did not witness the actual shooting. E'lorna does not explain what testimony Dericka would have provided that would not have been duplicative to the other evidence already at trial. Additionally, as the state notes, it is entirely possible Dericka would not have provided favorable testimony for E'lorna as E'lorna was responsible for Dailey's death. Thus, we do not find here that trial counsel's failure to subpoena Dericka amounted to deficient performance.

### C. Failure to Object to Instruction Not to Consider Self-Defense

{¶ 56} E'lorna's third allegation of ineffective assistance of counsel is her trial counsel's failure to object to the state's request for a jury instruction that the jury should not consider self-defense after defense counsel suggested self-defense was at issue. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25. If the objection would not have been successful, the appellant cannot prevail on a claim of ineffective assistance of counsel. *Id.*, citing *Johns* at ¶ 25.

{¶ 57} As we explained in our resolution of E'lorna's third assignment of error, the trial court did not abuse its discretion in refusing to instruct the jury on self-defense or defense of another. Nonetheless, E'lorna asserts her trial counsel was deficient in failing to object when the trial court instructed the jury that it was not to consider self-defense. This instruction came at the request of the state after the trial court made its decision not to

instruct on self-defense since defense counsel had indicated throughout the trial to the jury that E'lorna had acted in self-defense or defense of another. The parties discussed the matter with the trial court and agreed on the following instruction:

> The jury may not consider self-defense on either Count One or Count Two, however, the State must still prove the charges of Aggravated Murder and/or Murder beyond a reasonable doubt.
>
> The jury may also consider the lesser charge of Voluntary Manslaughter on each count. The Defendant must prove by a preponderance of the evidence the factors or mitigating circumstances that reduced Aggravated Murder and/or Murder to Voluntary Manslaughter.

(Tr. Vol. 5 at 1067.)

{¶ 58} E'lorna now argues it was confusing to the jury to instruct it not to consider self-defense. However, despite insisting the instruction was unnecessary, E'lorna makes no argument that the instruction was legally incorrect, nor does she explain why, specifically, the instruction was confusing. Because the instruction was a correct statement of the law and was warranted based on defense counsel's earlier representations that E'lorna had acted in self-defense, E'lorna does not show that an objection on this instruction had a reasonable probability of success. *Jones* at ¶ 52. Thus, E'lorna does not demonstrate deficient performance from trial counsel's failure to object to the jury instructions.

## D. Cumulative Effect of Errors

{¶ 59} E'lorna finally argues that even if we conclude none of the above alleged errors are sufficient to find ineffective assistance of counsel standing alone, the cumulative effect of these errors nonetheless resulted in E'lorna being denied a fair trial.

{¶ 60} E'lorna relies on *State v. DeMarco*, 31 Ohio St.3d 191 (1987), for the proposition that although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id.* at paragraph two of the syllabus. E'lorna urges us to conclude that her counsel's alleged errors, when considered together, deprived her of a fair trial. However, having determined that none of E'lorna's three allegations of ineffective assistance of counsel constituted deficient performance by her trial

counsel, and thus failed to satisfy the first prong of the *Strickland* analysis, E'lorna does not demonstrate error, let alone cumulative error. *See State v. Ferrell,* 10th Dist. No. 19AP-816, 2020-Ohio-6879, ¶ 50.

{¶ 61} For these reasons, E'lorna is unable to demonstrate she received the ineffective assistance of counsel. We overrule E'lorna's fifth assignment of error.

## VIII. Sixth Assignment of Error – Sentence

{¶ 62} In her sixth and final assignment of error, E'lorna argues the trial court erred in imposing a sentence not supported by the record and contrary to law. More specifically, E'lorna argues the trial court made erroneous findings to justify the sentence and that the sentence was contrary to the purposes and principles of sentencing.

{¶ 63} In sentencing a felony offender, the trial court must consider the overriding purposes of sentencing, which are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). This requires consideration of "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *State v. Wilburn*, 10th Dist. No. 17AP-602, 2018-Ohio-1917, ¶ 7. "Further, pursuant to R.C. 2929.12(A), the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct, as well as the factors set forth in R.C. 2929.12(D) and (E) relating to the likelihood of recidivism, along with any other relevant factors." *Id.*

{¶ 64} The trial court has the discretion to determine, upon considering and weighing all relevant factors, what sentence would best serve the purposes and principles of sentencing. *State v. Anderson*, 10th Dist. No. 16AP-810, 2017-Ohio-7375, ¶ 14 (trial court, in exercising discretion, determines weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances). Consequently, an appellate court will not reverse a trial court's sentencing decision unless the evidence is clear and convincing that either the record does not support the sentence or the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2); *State v. Chandler*, 10th Dist. No. 04AP-

895, 2005-Ohio-1961, ¶ 10, citing *State v. Maxwell*, 10th Dist. No. 02AP-1271, 2004-Ohio-5660, ¶ 27, citing *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 10. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1 ("an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law").  Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 65} E'lorna points to several findings the trial court made that she asserts were unsupported by the record.  First, E'lorna challenges the trial court's finding under R.C. 2929.12(B)(6) and (9) that E'lorna's relationship with the victim facilitated the offense and that the offense involves a family or household member because "E'lorna, Dericka, and [Dailey] lived together for some period of time at the home on Columbian Avenue." (Oct. 23, 2019 Sentencing Tr. at 19.)  E'lorna argues this finding is erroneous because she had introduced evidence at trial that Dailey had recently moved out of the residence and that Dericka and Dailey had ended their relationship by the time of the offense.  However, as the trial court noted, Dailey was a household member of the residence at the time of the offense, explaining why the police could not force Dailey to leave the property when they were first called to the residence.  Moreover, even if Dericka had recently ended her relationship with Dailey, the record was clear that the two had been in an intimate partner relationship for quite some time while E'lorna lived with them.  Thus, the record supported the trial court's findings under R.C. 2929.12(B)(6) and (9).

{¶ 66} E'lorna also argues the trial court should not have considered the factor found in R.C. 2929.12(B)(9), which provides that an offense is more serious if it involves a family or household member and the offender committed the offense in the vicinity of children of the offender or victim.  E'lorna asserts that R.C. 2929.12(B)(9) is only applicable when the defendant has been convicted of one of the listed predicate offenses, namely, domestic violence, assault, aggravated assault, and felonious assault.  Since E'lorna was convicted of voluntary manslaughter, she argues the trial court should not have considered R.C. 2929.12(B)(9) at all.  However, as this court has noted, "R.C. 2929.12(A) provides that, in addition to the factors listed in (B), (C), (D), and (E), the court 'may consider any other

factors that are relevant to achieving those purposes and principles of sentencing,' and R.C. 2929.12(B) provides that the sentencing court may consider 'any other relevant factors, as indicating [that] the offender's conduct is more serious than conduct normally constituting the offense.' " *State v. Gore*, 10th Dist. No. 15AP-686, 2016-Ohio-7667, ¶ 18 (finding the trial court did not err in "taking under strong advisement" the R.C. 2929.12(B)(9) factor in imposing a sentence on a conviction of voluntary manslaughter). Here, the trial court specifically noted that not all of R.C. 2929.12(B)(9) applied because the offense was not committed in the vicinity of children. The trial court explained to what extent each factor did and did not apply to E'lorna's situation, and we do not agree with E'lorna that the trial court erred in noting her household relationship with Dailey.

{¶ 67} Next, E'lorna challenges the trial court's findings under R.C. 2929.12(C)(1) and (2) that Dailey did not facilitate the offense but that E'lorna nonetheless acted under a strong provocation. E'lorna seems to suggest these findings are somehow inconsistent, but we disagree. These findings reflect the jury's finding that E'lorna acted under strong provocation when she shot and killed Dailey.

{¶ 68} E'lorna also challenges the recidivism factors under R.C. 2929.12(D) and (E), contending the trial court placed too much emphasis on E'lorna's drug and/or alcohol abuse that was revealed as part of the presentence investigation report. E'lorna does not argue that there was no evidence to support her drug or alcohol use, but she asserts the trial court erred in presuming her history of substance use was related to the offense. However, though we agree with E'lorna that nothing at trial indicated that E'lorna's actions related to drug or alcohol use, the trial court simply noted the findings from the presentence investigation and found that the factor was present based on E'lorna's admission of weekly drug use and failure to see a pattern.

{¶ 69} The trial court additionally found, under R.C. 2929.12(D)(5), that E'lorna showed no genuine remorse for the offense. E'lorna argues that finding was in direct conflict with her testimony that she felt sorry that Dailey was dead but maintained that she felt she had no other option. However, the trial court noted E'lorna's testimony and, having had the opportunity to evaluate how sincere she was in her expressions of remorse, found that while E'lorna may have expressed remorse, she did not demonstrate genuine remorse as R.C. 2929.12(D)(5) contemplates. *State v. Dodson*, 10th Dist. No. 20AP-297, 2021-Ohio-

2415, ¶ 10 (the trial court is in the best position to evaluate the genuineness of an offender's expression of remorse).

{¶ 70} The final statutory factor that E'lorna challenges is the trial court's finding, under R.C. 2929.12(E)(4), that it could not state, with certainty, that the offense was committed under circumstances not likely to recur. However, E'lorna places more emphasis on this factor than the trial court did at sentencing. The trial court relied on E'lorna's depiction of herself as very protective of her siblings. While the trial court found this was the most serious form of the offense, it found "it is not likely, and [the trial court is] hopeful that [E'lorna] based on her record will not commit crimes in the future." (Sentencing Tr. at 27.) Having reviewed the record, we do not agree with E'lorna that the trial court's findings were not clearly and convincingly supported by the record.

{¶ 71} More generally, E'lorna argues her ten-year sentence on her voluntary manslaughter conviction was too lengthy given her repeated assertions that she was acting to defend her sister from what she characterized as a violent intimate relationship. However, a "sentence is not clearly and convincingly contrary to law when a trial court considers the principles and purposes of sentencing contained in R.C. 2929.11 and the factors listed in R.C. 2929.12, properly imposes postrelease control and sentences the defendant within the permissible statutory range." *State v. Haddad*, 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 19. Indeed, E'lorna's ten-year sentence was within the range of permissible sentences as set forth in R.C. 2929.14. Further, though E'lorna argues her sentence is contrary to law based on the trial court's alleged failure to adequately consider the purposes and principles of sentencing, her actual argument reflects a mere disagreement with the weight the trial court assigned to the statutory factors. However, it is for the trial court to determine the appropriate weight, if any, to assign to the particular statutory factors. *State v. Saur*, 10th Dist. No. 10AP-1195, 2011-Ohio-6662, ¶ 46, citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Though E'lorna disagrees with the trial court's balancing of the sentencing factors and other relevant considerations, " 'such a disagreement does not make a sentence that falls within the applicable statutory range contrary to law.' " *Anderson* at ¶ 14, quoting *State v. Reeves*, 10th Dist. No. 14AP-856, 2015-Ohio-3251, ¶ 10, citing *State v. Stubbs*, 10th Dist. No. 13AP-810, 2014-Ohio-3696, ¶ 16.

{¶ 72} For these reasons, we reject E'lorna's argument that her sentence is contrary to law.  Accordingly, we overrule E'lorna's sixth and final assignment of error.

## IX. Disposition

{¶ 73}  Based on the foregoing reasons, the jury did not return inconsistent verdicts in finding E'lorna not guilty of voluntary manslaughter under Count 1 of the indictment but guilty of voluntary manslaughter under Count 2 of the indictment.  Moreover, the trial court did not err in denying E'lorna's motion for funds for the assistance of an expert witness on battered woman syndrome, did not err in refusing to provide an instruction on self-defense and defense of another, did not abuse its discretion in its evidentiary rulings, and did not err in imposing E'lorna's sentence, and E'lorna did not receive the ineffective assistance of counsel.  Having overruled E'lorna's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and NELSON, JJ., concur.

NELSON, J., retired, formerly of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

NELSON, J., concurring.

{¶ 74}  I join in the decision of the court, and write separately simply to provide a bit of further context for the jury's verdicts.

{¶ 75} At least on this record, it seems to me that voluntary manslaughter as committed knowingly while under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation from the victim could be a "lesser  [inferior-degree] offense" of aggravated murder with prior calculation and design only through the waystation of murder as itself a lesser-included offense of aggravated murder.  That is, the jury here could not have found that E'lorna acted *both* purposefully with prior calculation and design *and* out of sudden passion or rage.  And it did not: it acquitted her of the aggravated murder count (and of voluntary manslaughter appended there by the judge's instructions without an intermediate murder option).  It then turned to the murder charge set forth in Count 2 and found E'lorna guilty of the inferior-degree offense of voluntary

manslaughter deriving from that count. E'lorna cannot (or at least does not) claim error or prejudice in the Count 1 formulation, for she was acquitted on that count. And here, voluntary manslaughter was an inferior-degree offense of murder as charged in Count 2, and the jury was well within its rights to convict her on that score.

{¶ 76} I don't think the trial court was well advised to offer a voluntary manslaughter possibility in connection with the aggravated murder charge when murder simpliciter was charged in a second count (and when the lesser-included offense of murder was not offered as to the first count). But the jury sorted through matters; again, the charge as to Count 1 is not claimed as error, and E'lorna makes no real argument that the trial court erred in charging the jury on aggravated murder and murder as separate counts. I concur in the decision of this court upholding the conviction and sentence.