[Cite as *State v. Holladay*, 2023-Ohio-3577.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DONALD W. HOLLADAY | : | Case No. 2023 CA 00021 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:　　　　　Appeal from the Court of Common
　　　　　　　　　　　　　　　　　　Pleas, Case No. 2022-CR-0055


JUDGMENT:　　　　　　　　　　　　　Affirmed


DATE OF JUDGMENT:　　　　　　　　　October 2, 2023


APPEARANCES:

For Plaintiff-Appellee　　　　　　　　For Defendant-Appellant

KYLE L. STONE　　　　　　　　　　　BERNARD L. HUNT
PROSECUTING ATTORNEY　　　　　　110 Central Plaza South, 5th Floor
　　　　　　　　　　　　　　　　　　Canton, OH  44702

　BY:　Lisa A. Nemes
　　　　110 Central Plaza South, Suite 510

Canton, OH  44702-1413

*King, J.*

{¶ 1}  Defendant-Appellant Donald Warren Holladay appeals the September 14, 2022 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On December 15, 2021, several Stark County Sheriff's Deputies responded to an apartment on Whipple Avenue NW in response to a 911 call. The caller stated they heard yelling and screaming coming from apartment four and heard a female voice say "put down the knife."

{¶ 3}  Upon arrival, Deputies Josh Stansberry and Tyler Miller approached the door of apartment four. Moments later, a woman later identified as Misty Goodwin opened the door, exited the apartment in a hurry, and said "go, go, go, help, he's crazy." Transcript of trial (T.) 135. Goodwin appeared to be in distress.

{¶ 4}  Deputies entered the apartment using their flashlights as the apartment was dimly lit. They did not announce themselves as law enforcement but were in full uniform. They almost immediately made visual contact with Holladay who was standing in the hallway. He was yelling nonsense such as "All in…don't you kill me in a black hole." State's exhibit 1. Because the call indicated Holladay may have a knife, deputies ordered Holladay to the ground. He refused and yelled "Nope!" *Id.* Stansberry drew his firearm and Miller drew his taser. Eight to ten seconds after the deputies made visual contact with Holladay, Holladay, while still yelling, pulled a mirror of the wall and threw it at the deputies. Sansberry raised his arm to protect himself and was struck in the forearm with

the mirror. Holladay continued to ignore orders from the deputies to get on the ground. Instead, he grabbed a second mirror and charged at the deputies, striking Deputy Miller.

{¶ 5}   After Holladay struck the deputies, they took him to the floor and attempted to place him under arrest. Holladay struggled, kicking and flailing about. The assistance of a third deputy was required to place Holladay in handcuffs.

{¶ 6}   Deputy Miller called for an ambulance to attend to cuts Holladay sustained from broken mirror shards on the floor. Miller also sustained injury from the broken mirror shards and was treated at a hospital.

{¶ 7}   As a result of these events, on January 26, 2022, the Stark County Grand Jury returned an indictment charging Holladay with two counts of assaulting a peace officer, felonies of the fourth degree, and one count of resisting arrest, a misdemeanor of the first degree.

{¶ 8}   Holladay plead not guilty to the charges and elected to proceed to a jury trial which took place on August 31, 2022.

{¶ 9}   The state presented testimony from Stansberry and Miller who provided the above outlined facts.

{¶ 10} Goodwin testified on behalf of Holladay. She stated shortly before the deputies arrived, there had been visitors at their apartment who did not want to leave when asked and Holladay "went a step further than that and made them leave." T. 129. Goodwin testified that within five minutes, there was pounding at the door and she thought it was the unwanted visitors returning. She claimed when she answered the door she did not know what to do, so she just ran down the steps in front of the apartment. She stated she returned quickly and saw the deputies attempting to arrest Holladay.

{¶ 11} Confronted with the deputy's body camera footage on cross examination, Goodwin admitted she "probably" told deputies Holladay was acting crazy with a knife and that Holladay was on methamphetamine. T. 137, 142.

{¶ 12} Holladay took the stand in his own defense. He testified he did not know Stansberry and Miller were deputies because they were blinding him with their flashlights and he therefore could not see their uniforms. He stated he believed it was the unwanted guests returning and that he had to act to protect himself and his home. Holladay testified he did not know the men were law enforcement officers until he was struggling with them on the floor. He stated his nonsensical screaming and ranting was a result of his PTSD.

{¶ 13} After hearing the evidence and deliberating, the jury convicted Holladay as charged. He was subsequently sentenced to two consecutive 18-month prison terms for assaulting the deputies, and a concurrent 30-day sentence for resisting arrest.

{¶ 14} Holladay filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 15} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO PURSUE THE VIABLE DEFENSE OF SELF-DEFENSE."

II

{¶ 16} "THE TRIAL JUDGE ERRED AND DENIED APPELLANT A FAIR TRIAL BY FAILING TO GIVE THE JURY THE INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE WHEN THE EVIDENCE INTRODUCED AT TRIAL GAVE RISE TO THE DEFENSE."

III

{¶ 17} "THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW, AS HIS CONVICTION OF RESISTING ARREST WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

I

{¶ 18} In his first assignment of error, Holladay argues his counsel rendered ineffective assistance because he failed to pursue the affirmative defense of self-defense. We disagree.

Ineffective Assistance of Counsel

{¶ 19} To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687– 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 20} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland,* 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty

of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones,* 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

Self Defense

{¶ 21} R.C. 2901.05(B)(1) provides:

> (B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 22} A defendant is entitled to an instruction on self-defense when evidence has been presented that tends to support the defendant acted in self-defense. *State v. McCallum*, 10th Dist. Franklin No. 19AP-796, 2021-Ohio-2938, ¶ 38. "[Similar] to the standard for judging the sufficiency of the state's evidence, if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 25, citing *State v. Filiaggi*, 86 Ohio

St.3d 230, 247, 714 N.E.2d 867 (1999); *State v. Robinson*, 47 Ohio St.2d 103,109-112, 351 N.E.2d 88 (1976). "A defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." Id. at ¶ 25. However, "[a] bare assertion by the defendant that he acted in self-defense will not bring the affirmative defense of self-defense into issue in the trial." *State v. Jacinto*, 2020-Ohio-3722, 155 N.E. 3d 1056, ¶ 47, (8th Dist.) quoting *State v. Gideons*, 52 Ohio App.2d 70, 73, 368 N.E.2d 67 (8th Dist.1977).

{¶ 23} The elements of self-defense when deadly force is not used are (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) the defendant did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Paskins*, 200 N.E.3d 684, 2022-Ohio-4024, ¶ 48 (5th Dist.). Self-defense is an affirmative defense, not an element of a crime. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653 ¶ 24. "The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden." *State v. Rengert*, 5th Dist. Delaware No. 19 CAA 10 0056, 2021-Ohio-2561, ¶ 33.

{¶ 24} When reviewing a record to determine whether there is sufficient evidence to support providing an instruction, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Patterson*, 11th Dist. Trumbull No. 2022-T-0092, 2023-Ohio-2350, ¶ 73, quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

### A Self-Defense Instruction was not Warranted

{¶ 25} Here, Holladay was at fault for creating the situation giving rise to the affray because Holladay was the first aggressor. Goodwin granted the deputies entrance into the apartment and within 10 seconds of their entry Holladay was throwing household items at the deputies. While here on appeal Holladay argues he was not at fault because the deputies had their weapons drawn, this claim conflicts with Holladay's trial testimony. At trial, Holladay claimed he was unable to see the deputies or even look toward them because their flashlights were too bright. T. 148.

{¶ 26} Because the state could have readily shown Holladay was the first aggressor and therefore not entitled to a self-defense instruction, trial counsel did not render ineffective assistance by failing to request the instruction.

{¶ 27} The first assignment of error is overruled.

II

{¶ 28} In his second assignment of error, Holladay argues the trial court committed plain error by failing to sua sponte provide a self-defense instruction. We disagree.

{¶ 29} Because Holladay neither filed a proper notice of self-defense nor requested the instruction at trial, we review this assignment of error for plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken

with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶ 30} As discussed in the first assignment of error, Holladay was not entitled to a self-defense instruction. Holladay cannot, therefore, demonstrate the outcome of his trial would have been different but for the alleged error.

{¶ 31} The second assignment of error is overruled.

III

{¶ 32} In his final assignment of error, Holladay argues his conviction for resisting arrest is not supported by sufficient evidence. We disagree.

{¶ 33} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d

380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 34} Holladay was convicted of one count of resisting arrest pursuant to R.C. 2921.33(B) which provides "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer."

{¶ 35} In his brief, Holladay conflates "lawful arrest" and arrest. A "lawful arrest" is an element of resisting arrest which the prosecution must prove beyond a reasonable doubt. *In re M.H.*, 2021-Ohio-1041, 169 N.E.3d 971, ¶ 25 (1st Dist.). In order for an arrest to be lawful, "the arresting officer must have probable cause or a reasonable basis to believe that the offense for which the defendant has been arrested did, in fact, occur." *State v. Glenn*, 1st Dist. Hamilton No. C-030356, 2004-Ohio-1489, 2004 WL 595644, ¶ 23. An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980). Here was required to prove Holladay resisted a "lawful arrest."

{¶ 36} Deputies Stansburry and Miller witnessed the crime of assaulting a peace officer as they were in fact the victims. The arrest was therefore lawful.

{¶ 37} Holladay argues he was unaware the deputies were law enforcement officers and cites this court's decision in *State v. Hill*, 1986 WL 1766 (5th Dist. Morgan) in support. In *Hill*, however, we found there was no lawful arrest because neither of the

officers involved "were clothed in any type uniform which identified them as security officers." *Id.* *1. Both deputies in this matter were in uniform.

{¶ 38} Holladay also makes a manifest weight argument alleging he could not see their uniforms because the deputy's flashlights were too bright. It was the jury's job to weigh Holladay's story that he was fighting intruders and could not see the deputy's uniforms against the state's evidence that Holladay was in a drug-fueled frenzy. Upon review of the entire record, we find the jury did not lose its way in making its credibility determinations and convicting Holladay of resisting arrest.

{¶ 39} The final assignment of error is overruled.

{¶ 40} The judgment of the Stark County Court of Common Pleas is affirmed.

By King, J.,

Gwin, P.J. and

Delaney, J. concur.

: