[Cite as *State v. Helmondollar*, 2024-Ohio-2077.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 23CA0060 |
| | : | |
| NATHAN HELMONDOLLAR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Case No. 22CR172


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      May 29, 2024


APPEARANCES:

For Plaintiff-Appellee:

JENNY WELLS
LICKING CO. PROSECUTOR
KENNETH OSWALT
20 S. Second St., 4th Floor
Newark, OH 43055

For Defendant-Appellant:

CHRIS BRIGDON
8138 Somerset Rd.
Thornville, OH 43076

*Delaney, P.J.*

{¶1} Appellant Nathan Helmondollar appeals from the April 26, 2023 Judgment Entry of sentence of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The parties do not dispute the following facts which are adduced from the record of appellant's jury trial.

{¶3} Jane Doe is appellant's ex-girlfriend. She was "exploring a romantic relationship" with Sam Roe, an acquaintance of appellant's. The two men developed a rivalry over Jane Doe and exchanged antagonistic text messages in the days preceding the shooting giving rise to the instant case. Roe's texts to appellant included, "Wait till I see you bitch boy," "See the thing is wait till I see you[,] Gaine the fuck over;" "what are you waiting on bitch;" "I bet you don't show up[,] where the fuck are you;" and "Come square up lets see whos a bitch" (*sic* throughout). Roe agreed the texts amounted to an invitation to come over and fight, although he never intended to act on the threats and only sought to scare appellant.

{¶4} On March 4, 2021, Doe and Roe spent the day together and then went to a friend's house where Roe drank and smoked marijuana. Around 9:00 p.m., they heard appellant arrive outside on his motorcycle. Jane Doe went outside and spoke to appellant, then told Roe she was leaving with appellant.

{¶5} Roe gathered his things in a backpack and left the house. The backpack was over his shoulder and a cigarette was in his hand. As Roe walked past appellant, appellant said "hey pal" and shot Roe once in the right center of his back. Roe testified

he was angry after he was shot and tried to push over appellant's motorcycle, but did not have the energy to do so and fell to the ground. The gunshot wound was located in the right center of Roe's back, with the bullet lodged just below the skin.  Later at the hospital, the bullet "popped out" on its own.

{¶6} Witness 1 lived in the same apartment complex and was looking out her window watching for her husband. She noticed two men outside near a car and a motorcycle. One man turned sideways and appeared to be smoking a cigarette. The other man raised a gun and shot the other man once. Witness 1's windows were closed and she did not hear any conversation, but the men did not appear to fight prior to the shooting. Witness 1 did not observe the victim to have any weapons and he did not appear to threaten the shooter. The shooter fled and Witness 1 called 911; the call was played by appellee at trial.  Witness 1 testified she had a clear view of events.

{¶7} Witness 2 also lived in the apartment complex and went outside after she heard a gunshot, in time to see a motorcycle drive away. Witness 2 assisted the victim and stayed with him until police arrived.

{¶8}  Roe told Officer Lewis, one of the first on scene, that appellant shot him. Lewis removed a knife from a sheath hanging on a necklace around Roe's neck.

{¶9} Roe also told Officer Thomas that appellant shot him. Thomas checked Roe's wounds and observed a bullet protruding from the area of his left rib cage.  Thomas also found a shell casing next to Roe's foot and collected it as evidence, noting the location indicated Roe was likely close to the shooter.

{¶10} A police weapons expert testified appellant's firearm was a Taurus 709 Slim nine-millimeter single-stack handgun designed to be concealed, although he didn't know whether the firearm was concealed in this case.

{¶11} Appellant fled after the shooting and police eventually tracked him to his mother's house, where they initiated surveillance and eventually arrested appellant on a traffic stop.

{¶12} Police interviewed appellant at the department and the interview was one of appellee's exhibits at trial. Appellant at first claimed to have no idea why he was there. Police asked if he was at the apartment, and he first claimed he picked up Jane Doe and left; appellant said Roe was a "stalker" who held Doe against her will and he heard through Doe that Roe "got messed up."

{¶13} When police told appellant they already spoke to witnesses at the scene, appellant admitted shooting Roe. He said Jane Doe went back inside the apartment to get her bag and Roe came out, charging at appellant. Roe spit in appellant's face and mumbled that Doe was leaving with him instead. Appellant claimed Roe shouldered him to the side and rammed his motorcycle, damaging the turn signal. Appellant further claimed Roe then lunged at him with his right hand from about three feet away, causing him to draw his firearm and shoot Roe in self-defense because he was in fear. Appellant believed he shot Roe in the left side. Appellant said Jane Doe and others came outside in a panic, and he and Doe rode off on his motorcycle.

{¶14} Appellant stated he was "open carrying" the firearm on a belt clip, although he admittedly did not have a concealed-carry permit. After the shooting, he put the gun in his pocket when he rode away.

{¶15} Detectives testified appellant's statement did not match the physical evidence, including the entrance wound to Roe's back. Appellant's account omitted the fact that he shot Roe in the back.

{¶16} Appellant told detectives he kept the firearm in a safe in his bedroom and gave them the passcode to access the safe. Police also found rifles in appellant's bedroom which would not fit in the safe.

{¶17} Detective Fumi testified that police attempted to interview friends at the apartment on the night of the incident, but some of them were too intoxicated to interview. The detective speculated some were under the influence of some type of drug and were behaving as though they used methamphetamine.

{¶18} Detective Farmer interviewed Roe in the ambulance after the shooting. Roe said he was trying to start a relationship with Jane Doe and appellant arrived. Roe said he was attempting to remove himself from the situation to avoid a confrontation but appellant shot him in the back.

{¶19} Appellant was charged by indictment with one count of felonious assault pursuant to R.C. 2903.11(A)(2), a felony of the second degree [Count I]; one count of carrying concealed weapons pursuant to R.C. 2923.12(A)(2), a felony of the fourth degree [Count II]; and one count of improper handling of firearms in a motor vehicle pursuant to R.C. 2923.16(B), a felony of the fourth degree. All three counts of the indictment were accompanied by firearm specifications.

{¶20} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found guilty as charged and sentenced to a total aggregate prison

term of 8 to 10½  years, including a mandatory 3-year consecutive sentence for the (merged) firearm specifications.

{¶21} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶22} "I. WAS THE APPELLANT DEPRIVED OF HIS STATE AND FEDERAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO OBJECT TO EVIDENCE THAT APPELLANT HAD AN EXTENSIVE CACHE OF WEAPONS IN HIS BEDROOM?"

{¶23} "II. WAS THE CONVICTION FOR FELONIOUS ASSAULT SUPPORTED BY THE WEIGHT OF THE EVIDENCE ON THE ISSUE OF WHETHER APPELLANT ACTED IN SELF-DEFENSE?"

{¶24} "III. W[ERE] THE INDEFINITE PRISON TERMS IMPOSED UNDER THE REAGAN TOKES LAW VIOLAT[IVE OF] THE JURY TRIAL GUARANTEE, THE DOCTRINE OF SEPARATION OF POWERS, AND DUE PROCESS PRINCIPLES UNDER THE FEDERAL AND STATE CONSTITUTIONS?"

**ANALYSIS**

I.

{¶25} In his first assignment of error, appellant argues he received ineffective assistance of defense trial counsel.  We disagree.

{¶26} Appellant argues defense trial counsel was ineffective in failing to object to detectives' testimony about rifles, knives, and a sword found in his bedroom during the search for the firearm used in the shooting. Appellee moved to admit exhibits including photos of the unrelated weapons in appellant's bedroom; defense trial counsel voiced no

objection to admission of the photos but the trial court *sua sponte* questioned the photos and noted the unrelated weapons were not relevant. Appellee argued the photos were relevant its assertion appellant put only the Taurus 9-millimeter in the safe, intending to hide it. Defense counsel pointed out appellant told police the firearm was in the safe and provided the passcode. The trial court excluded the photos, commenting "I think you're using the weapons there to make him out to be a violent and bad person, and I'd find that the prejudicial impact outweighs any probative value." T. 327-329.

{¶27} The photos were not entered into evidence, but detectives' testimony did include statements about the other weapons found in appellant's bedroom. Appellant argues defense trial counsel was ineffective in failing to object to these statements. To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶28} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶29} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶30} Appellant argues defense trial counsel should have objected to the testimony about and photos of his "stockpile of weapons." Brief, 3. The trial court *sua sponte* excluded the latter and appellant cannot point to any prejudice therefrom. We are left with counsel's failure to object to detectives' testimony about weapons found in appellant's bedroom, Appellant does not demonstrate how trial counsel's failure to object to the testimony affected the outcome of the trial. Indeed, trial counsel's failure to object could have been tactical. "Trial counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection." *State v. West*, 5th Dist. Fairfield No. 16 CA 11, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 102, internal citation omitted. Trial counsel may not have wanted to call attention to the statement. See, *State v. Smith*, 5th Dist. Stark No. 2023CA00063, 2024-Ohio-1557, ¶ 61. Moreover, the Supreme Court of Ohio held that "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

{¶31} Finally, even if counsel's failure to object reflected deficient performance, appellant has failed to establish prejudice under *Strickland* because he fails to demonstrate any reasonable probability that, but for the jury hearing about his other

weapons, the result of his trial would have been different. *State v. Watson*, 5th Dist. Stark No. 2022CA00145, 2023-Ohio-3137, ¶ 62.

{¶32} Accordingly, appellant's first assignment of error is overruled.

II.

{¶33} In his second assignment of error, appellant argues his felonious assault conviction is against the weight of the evidence because he acted in self-defense. We disagree.

{¶34} Appellee's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Watson*, 5th Dist. Stark No. 2022CA00145, 2023-Ohio-3137, ¶ 74, citing *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 27. As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds.

{¶35} "Weight of the evidence" addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982)*.*

{¶36} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 71 (1st Dist. 1983).

{¶37} Appellant challenges his conviction upon one count of felonious assault pursuant to R. C. 2903.11(A)(2), which provides that no person shall cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance. When an accused asserts the defense of self-defense, he does not seek to negate any of the elements of the offense which appellee is required to prove. Self-defense is an admission of the prohibited conduct coupled with a claim that the surrounding facts or circumstances exempt the accused from liability therefor— "justification for admitted conduct." *Watson*, supra, 2023-Ohio-3137, ¶ 80, citing *State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888 (1973).

{¶38} R.C. 2901.05(B)(1) provides as follows regarding self-defense:

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶39} Under R.C. 2901.05(B)(1), therefore, there are two burdens. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18. The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. *Messenger,* supra, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 21. The burden then shifts to appellee under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 24. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1); *Id.* at ¶ 26. Appellee need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶40} In the instance case, at the close of appellant's jury trial, the trial court provided the jury with an instruction regarding self-defense, which means that the trial court concluded that the record contained evidence that tends to support that appellant used the force in self-defense when he shot Sam Roe. R.C. 2901.05(B)(1); *Messenger,* supra, ¶ 26. The guilty verdict means appellee met its burden of persuading the jury beyond a reasonable doubt that appellant was not acting in self-defense when he shot Roe. *Id.*

{¶41} When deadly force is used, the elements of self-defense that appellee must now disprove at least one of are: (1) appellant was not at fault in creating the situation giving rise to the affray, (2) appellant had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and

that he did not use more force than necessary to defend against the attack, and (3) appellant must not have violated any duty to retreat or avoid the danger. *Watson*, supra, 2023-Ohio-3137, ¶ 84, citing *State v. Robbins*, 58 Ohio St.2d 74, 79, 388 N.E.2d 755 (1979).

{¶42} As to the third element of self-defense, "a person has no duty to retreat before using self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B); *Messenger,* supra, ¶ 10. "Simply put, the new 'stand your ground' law removes, in most cases, the duty to retreat before using self-defense." *Watson,* supra, ¶ 85, citing *State v. Robinette,* 5th Dist. Stark No 2021 CA 00124, 2023-Ohio-5, 205 N.E.3d 633, ¶ 51.

{¶43} The second element of self-defense "is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). The person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself or the other person. *Id.* at 330–331.

{¶44} "The objective part of the test requires consideration of 'whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack,' a reasonable person would believe that danger was imminent." *Watson*, supra, 2023-Ohio-3137, ¶ 86, internal citations omitted. The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger. *Id.*

{¶45} Here, the evidence does not support appellant's contention that he possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great bodily harm. He points to the threatening texts

exchanged with Sam Roe on the day preceding the shooting. Generally, neither words alone nor fear itself will constitute evidence of serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane,* 63 Ohio St.3d 630, 634-45, 590 N.E.2d 272 (1992). Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. *State v. Mack,* 82 Ohio St.3d 198, 201, 694 N.E.2d 1328.

{¶46} Appellant further asserts Roe "pushed him out of the way" and "slammed into his motorcycle." Brief, 7. A victim's simple pushing or punching does not constitute sufficient provocation to incite the use of deadly force in most situations. See, *State v. Koballa,* 8th Dist. Cuyahoga No. 82013, 2003-Ohio-3535 (concluding that sufficient provocation did not exist when the victim grabbed the defendant by the testicles and the arm); *State v. Poe,* 4th Dist. Jackson No. 00CA9, 2000-Ohio-1966 (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation); *State v. Pack*, 4th Dist. Pike No. 93CA525, 1994 WL 274429 (June 20, 1994) ("We find that a mere shove and a swing (which appellant by his own testimony ducked) are insufficient as a matter of law to constitute serious provocation reasonably sufficient to incite or arouse appellant into using deadly force.").

{¶47} Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat. *Watson*, supra, 2023-Ohio-3137, ¶ 88, citing *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 58. As to the degree of force that is permitted, the defendant is privileged to use the amount of force that is reasonably necessary to repel the attack. *State v. Williford*, 49 Ohio St. 3d 247, 551 N.E.2d 1279 (1990).

{¶48} Appellant demonstrated only verbal threats made by Roe prior to appellant's use of deadly force. Witness 1 testified Roe was standing near appellant smoking a cigarette, and when he turned sideways, appellant shot him. Witness 1 did not observed any aggression from Roe toward appellant. Roe was not armed; although he had a sheathed knife in a necklace around his neck, he never brandished it and the knife was removed from the sheath by police.

{¶49} If appellant's fear was only of physical harm, he was allowed by law only to use an amount of force that was warranted under the circumstances and proportionate to the perceived threat. *Watson*, supra, 2023-Ohio-3137, ¶ 89. Appellant's decision to shoot Roe in the back was deadly force and was disproportionate to the threat he faced under these circumstances. *Id.*

{¶50} While appellant was free to argue that he was justified in using deadly force, and the trial court instructed the jury accordingly, the jury may have reasonably chosen to reject his argument. Upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which appellant was convicted. We further find there is substantial evidence proving beyond a reasonable doubt that appellant was not acting in self-defense when he shot Roe and the degree of force used by appellant was unwarranted under the circumstances and disproportionate to the perceived threat. Therefore, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in finding appellant guilty of felonious assault and that appellant was not acting in self-defense. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction.

{¶51} Appellant's second assignment of error is overruled.

III.

{¶52} In his third assignment of error, appellant argues his indefinite sentence violates the jury trial guarantee, the doctrine of separation of powers, and due process principles of the federal and state constitutions.  We disagree.

{¶53} In his summary argument, appellant acknowledges we have repeatedly rejected his constitutional challenges to indefinite sentencing (see, e.g., *State v. Ratliff*, 5th Dist. No. 21CA000016, 2022-Ohio-1372, 190 N.E.3d 684, *appeal allowed,* 167 Ohio St.3d 1481, 2022-Ohio-2765, 192 N.E.3d 516, and *affirmed sub nom. In re Cases Held for State v. Hacker & State*, 2023-Ohio-3863).  Appellant further acknowledges he raised this summary assignment of error in light of the Ohio Supreme Court's consideration of *Hacker*, supra.

{¶54} His arguments have now been weighed and rejected by the Ohio Supreme Court. See, *State v. Hacker*, 173 Ohio St.3d 219, 2023-Ohio-2535, 229 N.E.3d 38.

{¶55} Appellant's third assignment of error is therefore overruled.

## CONCLUSION

{¶56} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.


By:  Delaney, P.J.,

Gwin, J. and

Wise, J., concur.